UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| TOUFIC DAKHLLALAH, | )   Case No.  6:09-bk-04539-KSJ |
| | )   Chapter 7 |
| Debtor. | ) |

| | |
|---|---|
| ROBERT J. PELLEGRINO, Individually, | ) |
| TJ'S CONNECTIONS, L.L.C., and | ) |
| CARLA P. MUSSELMAN, Chapter 7 | ) |
| Trustee, | )   Adversary No. 6:09-ap-739-KSJ |
| | ) |
| Plaintiffs, | ) |
| vs. | ) |
| | ) |
| METRO UNLIMITED, INC. and | ) |
| TOUFIC DAKHLLALAH, Individually, | ) |
| | ) |
| Defendants. | ) |
| | ) |

MEMORANDUM OPINION
<u>GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

The plaintiffs, Carla P. Musselman, Chapter 7 trustee for the bankruptcy estate of Toufic Dakhllalah; TJ's Connections, L.L.C.; and Robert J. Pellegrino filed a motion for summary judgment (Doc. No. 26) against the remaining two defendants, Toufic Dakhllalah, a Chapter 7 debtor, and Metro Unlimited, Inc.[1]  The defendants failed to respond to the Amended Complaint (Doc. No. 18), failed to comply with production requests for financial records, and, apparently, do not oppose entry of the requested summary judgment against them.

---

[1] AADI Electronics, Inc., Samir Rached, Bateson Business Brokerage, Inc., and Brian Bateson previously were defendants but were dismissed after reaching a settlement with the plaintiffs (Doc. No. 35).

The underlying dispute stems from a purchase contract (the "Purchase Contract"), entered into on November 25, 2007, between Pellegrino and the debtor for the purchase of the assets of defendant Metro Unlimited, Inc. The debtor allegedly made material fraudulent misrepresentations, upon which Pellegrino reasonably and detrimentally relied, in connection with the Purchase Contract. The debtor allegedly also used his wholly-owned company, Fix n More, Inc., to insulate assets from creditors and otherwise defraud, hinder, and delay creditors, falsified or failed to preserve his financial records, and knowingly made false oaths by failing to report income in his bankruptcy petition and during bankruptcy proceedings. Lastly, the debtor allegedly made significant fraudulent transfers without adequate consideration between himself, Fix n More, Inc., or Metro Unlimited, Inc.

Plaintiffs seek the following relief: (1) a money judgment against the debtor, including general and punitive damages, pre-judgment interest, attorneys fees and costs; (2) an order declaring such money judgment non-dischargeable under Section 523(a)(2)(A) of the Bankruptcy Code;[2] (3) rescission of the Purchase Contract, as well as the related promissory note and chattel mortgage; (4) an order concluding Fix n More, Inc. is the debtor's alter ego; (5) avoidance of any fraudulent transfers; and (6) the denial of the debtor's discharge under Sections 727(a)(2), (3), (4) or (5) of the Bankruptcy Code.

Pursuant to Federal Rule of Civil Procedure 56, made applicable by the Federal Rule of Bankruptcy Procedure 7056, a court may grant summary judgment where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party has the burden of establishing the right to summary judgment. Fitzpatrick v. Schlitz (In re Schlitz), 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986). In

---

[2] Unless otherwise stated, all references to the Bankruptcy Code herein refer to Title 11 of the United States Code.

determining entitlement to summary judgment, a court must view all evidence and make all reasonable inferences in favor of the party opposing the motion. Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).  Therefore, a material factual dispute precludes summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  In this case, the plaintiffs' pleadings state a sufficient basis for imposing non-dischargeable damages against the debtor.  The remaining defendants have filed nothing indicating they oppose summary judgment against them.

*Money Judgment*.  Plaintiffs seek general damages in the amount of $104,000.00, punitive (treble) damages in the amount of $312,000.00, prejudgment interest from November 2007 to entry of judgment, attorney's fees in the amount of $25,375.00, and costs in the amount of $700.00.  The Amended Complaint establishes that the debtor made actual fraudulent misrepresentations when he sold Metro Unlimited's assets to Pellegrino and TJ's Connections. Plaintiffs have established a basis for monetary damages but have failed to establish any basis for treble or punitive damages.  Therefore, a money judgment in the amount of $104,000 shall be entered in favor of the plaintiffs.

As to pre-judgment interest, "entitlement to pre-judgment interest is discretionary." In re Industrial Supply Corp., 127 B.R. 62, 65 (M.D.Fla. 1991).  The Court deems prejudgment interest is appropriate in this case, and, in accordance with Florida Statutes Section 55.03[1], the

prejudgment interest amount is calculated by applying the applicable interest rate[3] to $104,000.00 over the period from November 25, 2007,[4] to December 31, 2009. Consequently, defendants shall be liable for $104,000.00 in general damages, $20,919.79 in prejudgment interest from November 25, 2007, to December 31, 2009, $25,375.00 in attorney's fees (awardable under the Purchase Contract), and $700.00 in costs, for a total judgment in the amount of $150,994.79.

*Dischargeability of Money Judgment*. Pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, a debtor cannot discharge a debt to the extent the debt is obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). To establish fraud pursuant to Section 523(a)(2)(A), a plaintiff must prove: (i) the debtor made a false representation to deceive the creditor; (ii) the creditor relied on the misrepresentation; (iii) the reliance was justified; and (iv) the creditor sustained a loss as a result of the misrepresentation. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998).

Plaintiffs alleged sufficient facts to make the money judgment against the debtor non-dischargeable under Section 523(a)(2)(A). The Amended Complaint claims the debtor

---

[3] Section 55.03[1], Florida Statutes, governs the rate of prejudgment interest: "On December 1 of each year, the Chief Financial Officer shall set the rate of interest that shall be payable on judgments or decrees for the year beginning January 1 by averaging the discount rate of the Federal Reserve Bank of New York for the preceding year, then adding 500 basis points to the averaged federal discount rate."

The year 2009 interest rate established pursuant to Fla. Stat. § 55.03 was 8.0% per annum. Both the year 2007 and 2008 interest rates established pursuant to Fla. Stat. § 55.03 were 11.0% per annum or .0003014 per day. The Court finds that beginning November 25, 2007, and ending December 31, 2009, prejudgment interest accrued (1) for 37 days of 2007 at .0003014 per day, (2) for the entire year of 2008 at 11% per year, and (3) for the entire year of 2009 at 8% per year. Fla. Stat. § 55.03 does not provide for compounding interest. Consequently, prejudgment interest has accrued on the $104,000.00 money judgment since November 25, 2007, in a total amount of $20,919.79.

[4] "Most cases involving wrongful deprivation of funds or similar tortuous conduct have held that prejudgment interest begins to accrue when the cause of action accrues." In re Glatstian, 215 B.R. 495, 498 (Bankr. D.N.J. 1997).

knowingly and fraudulently misrepresented material information related to Metro Unlimited, Inc.'s purchase records, sales records, profit and loss statements and other financial information in connection with the Purchase Contract. Pellegrino justifiably relied on such representations and suffered a loss as a result thereof. The Court determines the money judgment to be non-dischargeable under Section 523(a)(2)(A) of the Bankruptcy Code, as to the debtor, Toufic Dakhllalah.

*Rescission of Purchase Contract*. Plaintiffs also seek rescission of the Purchase Contract, as well as the related promissory note and chattel mortgage. Because the plaintiffs allege fraud and the defendants have not argued otherwise, the Court will grant rescission of the Purchase Contract as well as any related promissory note or chattel mortgage.

*Alter Ego Analysis*. Plaintiffs seek an order concluding Fix n More, Inc. is the debtor's alter ego, such that plaintiffs may satisfy a judgment against the debtor by recovering on Fix n More, Inc.'s assets. In essence, plaintiffs are asking the Court to "pierce the corporate veil" of Fix n More, Inc. In Florida, in order to "pierce the corporate veil," plaintiffs must prove three factors:

> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

Gasparini v. Pordomingo, 972 So.2d 1053, 1055 (Fla. 3rd DCA 2008) (*citing* Seminole Boatyard, Inc. v. Christoph, 715 So.2d 987, 990 (Fla. 4th DCA 1998).

Plaintiffs alleged the debtor was the president, sole owner, sole shareholder, operator, manager and controller of Fix n More, Inc. The debtor testified at his meeting of creditors that he used his personal credit cards (which represent a significant portion of his personal debt in his

individual bankruptcy) to finance merchandise for Fix n More, Inc. The corporation's separate identity was not lawfully maintained. The defendants have made no attempt to defend Fix n More, Inc.'s separate corporate existence. The Court, as a result, will find that Fix n More, Inc. is the debtor's alter ego, that Fix n More, Inc.'s corporate veil may be pierced, and that plaintiffs may satisfy their judgment against the debtor by recovering on Fix n More, Inc.'s assets.

*Fraudulent Transfers*. Plaintiffs claim the debtor made significant transfers, both pre- and post-petition, between himself, Fix n More, Inc. and Metro Unlimited, Inc. The transfers allegedly were made without adequate consideration. Plaintiffs seek avoidance of any such transfers pursuant to Bankruptcy Code Sections 548 (pre-filing fraudulent transfers) and 549 (post-filing unauthorized transfers), and recovery of the transfers from the transferee(s) pursuant to Bankruptcy Code Section 550. However, plaintiffs do not have evidence of <u>any</u> transfers. Because there is no proof as to the nature and amounts of such transfers, the Court cannot grant any affirmative recovery to the plaintiffs on these claims.

*Denial of Discharge*. Finally, plaintiffs seek the denial of the debtor's discharge under Sections 727(a)(2), (3), (4) or (5) of the Bankruptcy Code. The Court notes the party objecting to discharge has the initial burden of proving its objection. Fed. R. Bankr. P. 4005; <u>In re Hawley</u>, 51 F.3d 246, 249 (11th Cir. 1995). If the initial burden is met with evidence sufficient to establish the basis for the objection, the burden shifts to the debtor to explain why a discharge is warranted. "To be satisfactory, an explanation must convince the judge." <u>In re Chalik</u>, 748 F.2d 616, 619 (11th Cir. 1984) (citations omitted).

The Court finds that several of the subsections found in Section 727(a) justify the denial of the debtor's discharge. Focusing first on Section 727(a)(3), the provision states a "court shall grant the debtor a discharge, unless--

> . . . (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and

papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

11 U.S.C. § 727(a)(3). The requirement to maintain financial information is intended to protect the interests of creditors by requiring debtors to take such steps as ordinary fair dealing and common caution would dictate to explain their financial condition. In re More, 138 B.R. 102, 105 (Bankr. M.D. Fla. 1992) (*citing* In re Trogdon, 111 B.R. 655, 658 (Bankr. N.D. Ohio 1990)).

Plaintiffs sustained their initial burden by demonstrating the debtor falsified or failed to preserve his financial records and failed to comply with production requests with respect to his financial condition. After the plaintiffs' initial burden was met, the burden shifts to the debtor to satisfactorily explain the loss of assets. Debtor chose not to participate in the adversary proceeding or to offer any explanation for his loss or non-production of financial records. Consequently, debtor has not met his burden and his discharge is denied pursuant to Section 727(a)(3).

Similarly, Section 727(a)(4)(A) provides a "court shall grant the debtor a discharge, unless--

> . . . (4) the debtor knowingly and fraudulently, in or in connection with the case--
> (A) made a false oath or account;

11 U.S.C. § 727(a)(4)(A). "To justify denial of discharge under § 727(a)(4)(A), the false oath must be fraudulent and material." Swicegood v. Ginn, 924 F.2d 230, 232 (11th Cir. 1991) (*citing* Chalik, 748 F.2d at 619).

Plaintiffs sustained their initial burden by demonstrating the debtor knowingly made false oaths by failing to report income in his bankruptcy petition. Specifically, the Amended Complaint contains an affidavit stating the debtor admitted he did not disclose in his bankruptcy petition funds he received from other businesses. The affidavit indicates the concealed income was not of trivial value and was material. After the plaintiffs' initial burden was met, the burden

shifts to the debtor to prove he did not knowingly and fraudulently make a false oath in connection with his bankruptcy case, or that such false oath was immaterial. Again, debtor chose not to participate in the adversary proceeding. Consequently, debtor has not met his burden and his discharge also is denied pursuant to Section 727(a)(4)(A).[5]

*Summary*. For these reasons, the Court holds that plaintiffs are entitled to a money judgment to compensate for their injuries, although punitive and treble damages are denied. The debtor's debt to plaintiffs for $150,994.79 is non-dischargeable pursuant to Bankruptcy Code Section 523(a)(2)(A). The Purchase Contract is rescinded, together with any promissory note and/or chattel mortgage associated therewith. Fix n More, Inc. is the debtor's alter ego, and plaintiffs may satisfy their judgment against the debtor by collecting Fix n More, Inc.'s assets. Finally, the debtor's discharge is denied pursuant to Bankruptcy Code Section 727(a)(3) and (4)(A). Plaintiffs' request to avoid unspecified fraudulent transfers is denied. A separate judgment consistent with this ruling shall be entered.

DONE AND ORDERED in Orlando, Florida, nunc pro tunc to December 31, 2009, dated January 7, 2010.

KAREN S. JENNEMANN
United States Bankruptcy Judge

---

[5] Because the debtor's discharge clearly is denied under both Bankruptcy Code Sections 727(a)(3) and (4)(A), it is unnecessary for the Court to address the remaining subsections of Section 727.

Copies furnished to:

Plaintiff:  Robert John Pellegrino, 627 Hearthglen Blvd., Winter Garden, FL  34787

Plaintiff: TJ's Connections, LLC, PO Box 136286, Clermont, FL  34713

Plaintiff:  Carla P. Musselman, Chapter 7 Trustee, 1619 Druid Rd., Maitland, FL  32751

Debtor/Defendant:  Toufic Dakhllalah, 6977 Cadiz Blvd., Orlando, FL  32819

Defendant:  Metro Unlimited, Inc., 5861 Pitch Pine Drive, Orlando, FL  32819

Defendant:  Fix n More, Inc., 8001 S. Orange Blossom Trail, Lot 2-10, Orlando, FL  32809

United States Trustee:  135 W. Central Blvd. Suite 620, Orlando, FL  32801